IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| JANICE ACEVEDO, § | |
| § | |
| Petitioner, § | |
| § | |
| v. § | Civil Action No. 4:18-CV-862-O |
| § | |
| LORIE DAVIS, Director, § | |
| Texas Department of Criminal Justice, § | |
| Correctional Institutions Division, § | |
| § | |
| Respondent. § | |

## OPINION AND ORDER

Before the Court is a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 filed by Petitioner, Janice Acevedo, a former state prisoner who was confined in the Correctional Institutions Division of the Texas Department of Criminal Justice (TDCJ) when the petition was filed, against Lorie Davis, director of that division, Respondent. After considering the pleadings and relief sought by Petitioner, the Court has concluded that the petition should be denied.

## I. BACKGROUND

On October 20, 2017, in the 432nd Judicial District Court, Tarrant County, Texas, Case No. 1505172D, Petitioner pleaded guilty pursuant to a plea bargain agreement to one count of illegal voting, a second-degree felony, and was sentenced to four years' confinement in TDCJ, the sentence to run concurrently with her four-year sentence in Case No. 1453889D for felony DWI with a deadly weapon. SHR-01[1] 5, ECF No. 20-6. Petitioner did not directly appeal the judgment of conviction but filed two relevant state habeas-corpus applications challenging the conviction and sentence. The first

---

[1]"SHR-01" and "SHR-03" refer to the records of Petitioner's state habeas proceedings in WR-89,288-01 and WR-89,288-03, respectively.

was denied by the Texas Court of Criminal Appeals without written order on the findings of the trial court and the second was dismissed for failure to comply with the state's form requirements. *Id.* at 19-26; SHR-03 at 19-39; Actions Taken, ECF Nos. 20-1 & 20-15. By way of this petition, Petitioner challenges only her conviction for illegal voting in Case No. 1505172D. Pet'r's Resp. to Supp. Order to Show Cause 1, ECF No. 16.

## II. ISSUES

Petitioner raises four grounds for relief, which fall within the following general categories:

(1) ineffective assistance of counsel
(2) "due process of law–miscarriage of justice";
(3) cruel and unusual punishment; and
(4) illegal search and seizure.

Pet. 6-7, ECF No. 3.

## III. RULE 5 STATEMENT

Petitioner has accomplished exhaustion of her claims in state court, and Respondent does not assert that the petition is untimely or subject to the successive-petition bar.

## IV. STANDARD OF REVIEW

A § 2254 habeas petition is governed by the heightened standard of review provided for by the Anti-Terrorism and Effective Death Penalty Act (AEDPA). 28 U.S.C. § 2254. Under the Act, a writ of habeas corpus should be granted only if a state court arrives at a decision that is contrary to or an unreasonable application of clearly established federal law as determined by the United States Supreme Court or that is based on an unreasonable determination of the facts in light of the record before the state court. *See* 28 U.S.C. § 2254(d)(1)-(2); *Harrington v. Richter,* 562 U.S. 86, 100-01 (2011). Additionally, the statute requires that federal courts give great deference to a state

court's factual findings. *Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000). Section 2254(e)(1) provides that a determination of a factual issue made by a state court shall be presumed to be correct. It is the petitioner's burden to rebut the presumption of correctness through clear and convincing evidence. 28 U.S.C. § 2254(e)(1). Finally, when the Texas Court of Criminal Appeals, the state's highest criminal court, denies relief on a state habeas-corpus application without written order, typically it is an adjudication on the merits, which is likewise entitled to this presumption. *Richter,* 562 U.S. at 100; *Ex parte Torres,* 943 S.W.2d 469, 472 (Tex. Crim. App. 1997). In such a situation, a federal court "should 'look through' the unexplained decision to the last related state-court decision providing" particular reasons, both legal and factual, "presume that the unexplained decision adopted the same reasoning," and give appropriate deference to that decision. *Wilson v. Sellers,* --- U.S. ---, 138 S. Ct. 1188, 1191-92 (2018).

## V. DISCUSSION

### A. Ineffective Assistance of Counsel

Under her first ground, Petitioner claims that she received ineffective assistance of trial counsel, David Palmer, because counsel failed to—

(1) research and object to the improper deadly-weapon finding in the judgment;
(2) contact and interview witnesses;
(3) seek out evidence to rebut the state's evidence;
(4) object or suppress evidence;
(5) file a timely suppression motion; and
(6) preserve her right to appeal and advise her regarding how to appeal.

Pet. 6, ECF No. 3.

A criminal defendant has a constitutional right to the effective assistance of counsel at trial. U.S. CONST. amend. VI, XIV; *Evitts v. Lucey,* 469 U.S. 387, 396 (1985); *Strickland v. Washington*,

3

466 U.S. 668, 688 (1984). To prevail on an ineffective-assistance claim in the context of a guilty plea, Petitioner must demonstrate that her plea was rendered unknowing or involuntary by showing that (1) counsel's representation fell below an objective standard of reasonableness, and (2) there is a reasonable probability that, but for counsel's deficient performance, she would not have pleaded guilty and would have insisted on going to trial. *Hill v. Lockhart*, 474 U.S. 52, 56-59 (1985); *Smith v. Estelle*, 711 F.2d 677, 682 (5th Cir. 1983); *see also Strickland*, 466 U.S. at 687. In assessing the reasonableness of counsel's representation, "counsel should be 'strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.'" *Cullen v. Pinholster,* 563 U.S. 170, 189 (2011) (quoting *Strickland,* 466 U.S. at 690).

Additionally, by entering a knowing, intelligent, and voluntary guilty plea, a defendant waives all nonjurisdictional defects in the proceedings preceding the plea, including all claims of ineffective assistance of counsel that do not attack the voluntariness of the guilty plea. *Smith,* 711 F.2d at 682; *Bradbury v. Wainwright*, 658 F.2d 1083, 1087 (5th Cir. 1981). A guilty plea is knowing, voluntary, and intelligent if done with sufficient awareness of the relevant circumstances and likely consequences surrounding the plea. *Brady v. United States*, 397 U.S. 742, 748 (1970). If a challenged guilty plea is knowing, voluntary and intelligent, it will be upheld on federal habeas review. *James v. Cain*, 56 F.3d 662, 666 (5th Cir. 1995).

Petitioner raised her ineffective-assistance-of-counsel claims in her first state habeas application, and the state habeas judge, who also presided over the plea proceedings, referred the application to a magistrate judge for findings, legal conclusions, and recommendation, which were later adopted by the state habeas judge. SHR-01 85, ECF No. 20-6. In that proceeding, counsel filed an affidavit responding to Petitioner's ineffective-assistance claims as follows:

[Petitioner] hired me to represent her on a charge of illegal voting, and on a revocation of probation proceeding for a felony driving while intoxicated case. The allegation of the original motion to revoke probated sentence was that [Petitioner] had committed the new offense of illegal voting. The State later filed an amended motion to revoke probation to add a paragraph alleging that [Petitioner] had also committed the new offense of making a false entry in a governmental record.

After a contested hearing on the motion to revoke probation, the trial court found both allegations of the State's motion true, revoked [Petitioner]'s probation, and sentenced her to 4 years on the felony driving while intoxicated case.

The illegal voting charge was still pending, and I was able to negotiate a 4-year sentence on that case with the State, to be served concurrently with the sentence on the driving while intoxicated case. The State also agreed to bar any prosecution for the tampering with governmental record allegation that was related to the illegal voting case. I advised [Petitioner] to accept the offer, which she did. [Petitioner] pleaded guilty to the illegal voting case on October 20, 2017, one week after she was sentenced on the probation revocation. Contrary to [Petitioner]'s allegation, I did not "refuse to appeal" the case. In fact, I explained to her that she could still appeal the driving while intoxicated revocation, but that the offer made by the State was a good one, and that appealing the case would not likely be successful, particularly in a probation revocation case. I recall specifically that she agreed and responded that it was "a no-brainer."

[Petitioner] has alleged that I was unprepared. It is true that I had never defended anyone against a charge of illegal voting. Few defense attorneys have. But, before [Petitioner] even hired me, I looked and printed out the illegal voting statute in the Texas Election Code. In fact, I read and researched a large portion of the election code for anything that was even possibly relevant to the prosecution. I also researched and read every case annotation to the relevant statute that I could find. Contrary to [Petitioner]'s allegation, I was well-versed on the relevant law with regard to the charge and punishment at all times, and particularly at the time of the revocation hearing.

Throughout the representation, I continually negotiated with the attorney for the State in an attempt to resolve [Petitioner]'s cases. On August 8, 2017, the State had offered a 4-year concurrent sentence on each case in exchange for a plea of true on the felony driving while intoxicated revocation and a plea of guilty on the illegal voting case. On September 7, 2017, and as late as immediately before the contested revocation hearing, we were offered a plea bargain of a two (2) year sentence on each case, to be served concurrently. This was a minimum sentence for each case. I urged [Petitioner] on several occasions to seriously consider accepting this offer. [Petitioner] had indicated that she would accept an offer of probation, so I did

5

attempt on several occasions to convince the State to make a probation offer. The attorney for the State would not consider a probation offer.

I urged [Petitioner] to accept the offer because I believed that the State had a very strong guilt/innocence case on the illegal voting charge. I told [Petitioner] this repeatedly. The case was primarily based on two pieces of evidence: a document executed and returned to the Tarrant County Elections Administrator by [Petitioner] entitled "Response to Notice of Examination," and a recording of a telephonic interview of [Petitioner] by investigator Mark Taylor of the Tarrant County District Attorney's office.

The document referenced in the preceding paragraph was particularly strong evidence because, in it, [Petitioner] stated that she was a qualified voter and that she had not been convicted of a felony. The box next to the declaration "I have not been convicted of a felony" was checked, and next to it the handwritten word "DWI" was written, presumably by [Petitioner]. [Petitioner] believed that the handwritten portion that said "DWI" supported her contention that she was mistaken about whether the driving while intoxicated case to which she had pleaded guilty to the previous year was a felony.

I explained to [Petitioner] that her contention was plausible, but was not likely to be believed by a trier of fact, whether it be Judge or Jury. I told her that, at a minimum, a reasonable person would likely think that a person in the position of [Petitioner], having received correspondence from the Elections Administrator essentially informing her that she was an ineligible voter, and requesting more information, would at least do some investigation into the history of her own driving while intoxicated case, and whether or not it was a felony conviction--prior to executing the return correspondence and prior to actually voting.

The other evidence mentioned above was the recording of the telephonic interview between Investigator Taylor and [Petitioner]. [Petitioner] has alleged that I was ineffective because I failed to object when this incomplete recording was offered into evidence. However, because of its central importance [in] the case, I did indeed research the admissibility of the recording. I determined, after researching relevant case law, that the Judge was not likely to sustain an objection to the recording, in spite of the fact that a portion of the conversation at the end had been omitted—accidentally according to the witness. I certainly did cross-examine the witness regarding how this omission was suspicious. Additionally, [Petitioner] testified as to what she said on the omitted portion of the recording.

The important distinction was that the interview, which was conducted over the telephone while [Petitioner] was on her cell phone, was clearly not a custodial interview, and the strict requirements of Article 38.22, Texas Criminal Procedure did

6

not apply. In addition to my determination that the Judge was unlikely to sustain an objection to the admissibility of the recording, I determined that the admission of the evidence had some strategic value to her defense, because, on the recording, [Petitioner] told the investigator that she did not know that she was ineligible to vote at the time she voted. This was her contention all along. The statute itself indeed sets up a subjective standard that [Petitioner] "knew" she was an ineligible voter, and does not set forth an objective reasonable person standard.

[Petitioner] alleges in her first ground for habeas corpus relief that I rendered ineffective assistance in that I failed to contact witnesses, including her probation officer.

I did, however, contact several witnesses with regard to the case. After speaking with the witnesses, because of the nature of the illegal voting allegation, I determined that none of the witnesses [Petitioner] asked me to contact had any knowledge with regard to the determination of guilt or innocence on the illegal voting case. Therefore, it was not the type of case where there were witnesses to an event who could testify as to what they saw. These potential witnesses simply had no knowledge with regard to guilt/innocence, or as to whether [Petitioner] had violated her probation by committing a new offense. I determined that the witnesses [Petitioner] asked me to talk to had no such knowledge, and would have been useful only as punishment witnesses, as their knowledge was essentially they had known [Petitioner] for many years, and that she was a good person.

I did call as a witness Mr. Richard Hargraves, [Petitioner]'s ex-husband, to provide evidence regarding her history and general good character, and to be primarily a punishment witness.

With regard to the probation officer, I explained to [Petitioner] that the only allegations in the motion to revoke probation were the new offense of illegal voting, and the new offense of making a false entry in a governmental record, which was basically ancillary to the illegal voting charge. In fact, I offered evidence at the revocation hearing through the probation officer with regard to [Petitioner]'s general compliance with the terms and conditions of her probation.

[Petitioner] alleges that I "insulted" her on "several occasions." I did not insult her or intend to. I personally find her to be a very nice person. I recall speaking to her with some exasperation at times regarding the issues in the case. [Petitioner] was adamant at all times that [she] was not guilty and wanted a trial, yet it seemed by her actions that she was not taking the matter seriously. We had to reschedule at her request at least two appointments in my office to discuss the case, and to prepare her to testify if she decided to do so. [Petitioner] had a new job that she was concerned with seemingly more than the case. We did, however, meet in my office

7

> on two different occasions for approximately three hours to review the evidence in the cases and to prepare her to testify. We also spoke numerous times by telephone and communicated by email as well.
>
> [Petitioner] appears to allege that she was in some way discriminated against because of the tenor of her vote. No state witness testified as to the tenor of her vote, and there was no indication that any state witness knew the tenor of her vote. It could be argued that there was some insinuation as to who [Petitioner] voted for only from the testimony of her (as well as a question she posed to the investigator on the aforementioned recording) and Mr. Hargraves. I saw no indication whatsoever that [Petitioner] was discriminated against because of who she voted for.
>
> I, along with co-counsel David Cantu, represented [Petitioner] at the original September 2, 2016 plea hearing on the felony driving while intoxicated case. I did explain to [Petitioner] the deadly weapon allegation in the indictment, and its ramifications. At the time of the plea, our bargaining power to argue for the waiver by the State of the deadly weapon allegation was hampered, because on August 30, 2016, three days prior to the plea, [Petitioner]'s bond had been held insufficient because she had tested positive for alcohol in violation of her bond conditions. She was to be held at no bond. In order to avoid going into custody on the day of the plea, [Petitioner] pleaded to the indictment with the deadly weapon allegation. The only concession we were able to secure from the prosecution was the reduction of the years of the probation from 10 to 7 years. In addition, I made it clear from the beginning of the representation that [Petitioner] was charged with a felony offense because she had previously been convicted twice of driving while intoxicated.

SHR-01 48-53, ECF No. 20-6.

Based on counsel's affidavit, which the court found credible, the documentary record, and his own recollection of the trial proceedings, including Petitioner's demeanor in court, the state habeas court found that Petitioner presented no evidentiary basis for her claims and, applying the *Strickland* standard, concluded that Petitioner failed to satisfy either prong of *Strickland*. *Id.* at 61-66, 69-72. Petitioner presents no evidence, let alone clear and convincing evidence, in rebuttal. Thus, this Court must defer to the state court's findings. Having done so, the court's rejection of Petitioner's ineffective-assistance claims is not objectively unreasonable.

Petitioner's claims arise from a case in which, pursuant to a plea agreement, she judicially

8

confessed and pleaded guilty to the offense. Her conclusory assertions, after the fact, are insufficient to rebut the presumption that she received effective assistance of counsel and the presumption of regularity of the state court records. *See Ross v. Estelle,* 694 F.2d 1008, 1011-12 (5th Cir. 1983) (providing "[a]bsent evidence in the record, a court cannot consider a habeas petitioner's bald assertions on a critical issue in his pro se petition (in state and federal court), unsupported and unsupportable by anything else contained in the record, to be of probative evidentiary value"); *Webster v. Estelle,* 505 F.2d 926, 929-30 (5th Cir. 1974) (holding state court records "are entitled to a presumption of regularity"). Although there is no reporter's record of the plea proceeding, it is clear from the record before the Court that based on the trial court's and counsel's interaction with Petitioner, both the judge and counsel were under the opinion that she understood all the circumstances concerning her plea. Petitioner reinforced this belief by executing the written plea admonishments acknowledging that she was aware of the consequences of her plea; that her plea was knowingly, freely, and voluntarily entered; and that counsel provided "fully effective and competent representation." SHR-01 10-17, ECF No. 20-6. Petitioner's representations during the plea proceedings "carry a strong presumption of verity," and the official records, signed by Petitioner, her counsel, and the state trial judge are entitled to a presumption of regularity and are accorded great evidentiary value. *Blackledge v. Allison,* 431 U.S. 63, 74 (1977); *Webster v. Estelle,* 505 F.2d 926, 929-30 (5th Cir. 1974).

Petitioner knowingly and voluntarily entered her guilty plea, acknowledged her conduct, and received the benefit of the plea bargain and she does not allege that ineffectiveness of counsel rendered her plea involuntary. Therefore, her ineffective-assistance claims (1) through (5) involving alleged conduct preceding her plea are waived. The Court notes that even if Petitioner's first claim

9

were not waived, it is refuted by the record. The judgment in this case, as opposed to the judgment in Petitioner's felony DWI case, does not contain a deadly-weapon finding. SHR-01 5, 74, ECF No. 20-6.

Petitioner's sixth claim is refuted by the record. In her state habeas application, Petitioner asserted that counsel refused to appeal and left [her] no instructions." SHR-01 24, ECF No. 20-6. However, counsel averred that he did not refuse to appeal and that he explained Petitioner's appeal options as they relate to her felony DWI case. Under the terms of the plea agreement in this case, Petitioner expressly waived the right to appeal. *Id.* at 14.

### B. "Due Process–Miscarriage of Justice"

Under her second ground, Petitioner claims that the judge and state were prejudiced against her based on her "preference of voting." Pet. 6, ECF No. 3. However, there is no basis whatsoever existing anywhere in the record—save for Petitioner's bare assertion—to support her allegation of prejudice on the part of the state or the trial court because of her vote. Such bald assertions lack probative value and are insufficient to support a habeas claim. *See Ross,* 694 F.2d at 1011. To the extent she claims counsel was ineffective for failing to object to, or file a motion to suppress, the state's evidence, the claim does not relate to the voluntariness of her guilty plea and is waived as a result of the plea.

### C. Cruel and Unusual Punishment

Under her third ground, Petitioner claims that her punishment is cruel and unusual because it is excessive for the crime committed. Pet. 7, ECF No. 3. The state habeas court found that Petitioner was sentenced within the statutory range for a second-degree felony and that she presented no evidentiary or legal basis as to "the gravity of the offense and the harshness of the penalty"; the

sentences imposed on other criminals in Tarrant County"; or "the sentences imposed for the commission of the crime in other jurisdictions"; thus, there was no evidence that her sentence was disproportionate or cruel and unusual. SHR-01 68, 73-74, ECF No. 20-6. Based on its findings, the court concluded that her sentence was not "grossly disproportionate" to the offense. *Id.* at 74.

Deferring to the state court's findings, Petitioner fails to demonstrate that the state court's determination of the issue is contrary to, or an unreasonable application, of federal law. Petitioner indicates that her excessive-sentence claim arises under the Fourteenth Amendment, but she offers no argument to suggest that she was denied due process. To the extent that Petitioner indicates that her sentence was excessive under the Eighth Amendment, her claim fares no better. The Eighth Amendment protects against cruel and unusual punishments. In order for Petitioner to establish cruel and unusual punishment, she must establish that her punishment is grossly or significantly disproportionate to her crime. *Ewing v. California,* 538 U.S. 11, 20-24 (2003). *See also Solem v. Helm,* 463 U.S. 277, 290-92 (1983) (providing factors to consider in deciding proportionality of a sentence). If the contested sentence falls within the statutory limits, the sentence is entitled to a presumption of constitutionality and will not be upset unless the sentence is so disproportionate to the offense as to be completely arbitrary and shocking. *See Bonner v. Henderson,* 517 F.2d 135, 136 (5th Cir.1975). Petitioner makes no such showing. To the extent she claims counsel was ineffective for failing to investigate the effect of the deadly-weapon finding in her felony DWI case, the claim does not relate to the voluntariness of her guilty plea and is waived as a result of the plea.

**D. Illegal Search and Seizure**

Under her fourth ground, Petitioner claims that the recording of her phone conversation with the investigator was illegally obtained; that, because the battery ran down on the recorder, the

recording was "partial and incomplete"; and that the part of the recording that would have been beneficial to her was withheld in violation of *Brady*. Pet. 7, ECF No. 3. The state habeas court found that the recording was not introduced into evidence in Petitioner's case and that Petitioner failed to present a factual or evidentiary basis for this claim. Petitioner fails to do so here as well. SHR-01 66-67, 72, ECF No. 20-6. Her bald assertions on the issue lack probative value and are insufficient to support a habeas claim. To the extent she claims counsel was ineffective by failing to ask "artful" questions, object to the legality of, or move to suppress, the recording, the claim does not relate to the voluntariness of her guilty plea and is waived as a result of the plea.

## VI. CONCLUSION

For the reasons discussed, the petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 is DENIED. Further, for the reasons discussed, a certificate of appealability is DENIED.

**SO ORDERED** on this 11th day of December, 2019.

_____
Reed O'Connor
**UNITED STATES DISTRICT JUDGE**